IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LEGENT CLEARING, LLC** and **LEGENT GROUP, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ANDREW BALISTRERI,** *et al.*,<br><br>Defendants. | **Case No. 09 C 3662**<br><br>**Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

### I.  BACKGROUND

The defendants in this case are all non-residents of the State of Illinois, most of them from the State of California. They are investors who owned custodial accounts previously maintained with Advisory Financial Consultants, Inc. ("AFC"), their financial advisor. As the name implies, a custodial account is one that the investment advisor has custody over and prepares reports and collects and distributes income but does not actively trade. In 2006, AFC sold these accounts to Locke Haven LLC ("Locke Haven"), a purported Limited liability company. Locke Haven was a partnership between Enterprise Trust Company ("Enterprise"), which was chartered as a trust company in the state of Nevada, and TradeRight Corp. d/b/a TradeRight Securities Inc. ("TradeRight"), and was created for the sole purpose of acquiring Defendants'

accounts. Enterprise's principals were John H. Lohmeier ("Lohmeier") and Rebecca A. Townsend ("Townsend").

On March 3, 2008, the Securities and Exchange Commission (the "SEC") filed a complaint against Enterprise, Lohmeier, and Townsend in the United States District Court of the Northern District of Illinois, and on March 5, 2008, a Receiver was appointed who commenced collection efforts. The allegations, which are not contested by either Enterprise, Lohmeier or Townsend, are that, through a series of fraudulent misrepresentations by Lohmeier, the Defendants were induced to grant Enterprise and TradeRight discretion and control over their accounts. Enterprise and TradeRight then transferred these accounts to an omnibus margin account, solely in the name of Enterprise and under its sole control, at Legent Clearing LLC ("Legent"), an independent clearing broker. These accounts were commingled with the accounts of other Enterprise clients in the omnibus account. Most of other clients held managed accounts with enterprise rather than custodial accounts. A "managed account" is one where the investment service makes investment decisions on behalf of the investor clients, for which it receives a management fee.

According to the SEC complaint, beginning in June 2006 and continuing through November 2007, Enterprise through Lohmeier engaged in extensive speculative margin trading in the Legent account, including short selling and option trading. As a result

of mounting losses, Legent issued Enterprise numerous margin calls which forced Enterprise to sell securities in the omnibus margin account in order to cover.  The SEC suit alleges that Lohmeier, needing additional capital to meet margin calls, schemed to purchase the Defendants' accounts from AFC and created Locke Haven to accomplish this.  After the purchase, the Defendants were solicited to become Enterprise clients and those who did so had their accounts transferred to Legent, Enterprise's clearing broker, where, in spite of the fact that these were meant to be custodial accounts, they served as additional collateral for Enterprise's margin trading.

On October 10, 2008, the Defendants commenced an arbitration proceeding against Legent, TradeRight, Locke Haven, and Financial Networks Group LLC (alleged to be the owner of TradeRight) with the Financial Industry Regulatory Authority's ("FINRA") arbitration forum.  FINRA was created through a consolidation of the National Association of Securities Dealers ("NASD") and the member regulation operations of the New York Stock Exchange.  Legent is a member of FINRA.  FINRA Rule 12200 provides, in relevant part, that a member must arbitrate a dispute if the "dispute is between a member and a customer," the dispute arises in connection with the business activities of the member, "and arbitration is requested by the customer."  The Defendants contend that they each had a customer relationship with Legent.  Legent denies that any of the

Defendants are its customers so that it has no obligation to arbitrate. It filed this suit to enjoin Defendants from forcing it to arbitrate under FINRA.

There are two motions presently before the Court. Defendants have moved to transfer venue to the Northern District of California, and Legent has moved for a Temporary Restraining Order ("TRO") to stay the arbitration.

## II. DISCUSSION

### A. Motion to Transfer

The Defendants are mainly California residents and none reside in Illinois. The Plaintiff is a Nebraska corporation with its principal place of business in the Northern District of Illinois. Although Defendants deny that venue is proper in this District, most of the events giving rise to the arbitration proceeding occurred in the Northern District of Illinois. Enterprise, although it was a Nevada Corporation since dissolved, had its principal place of business in Illinois. Both Lohmeier and Townsend are Illinois residents. The SEC commenced its proceedings against Enterprise, Lohmeier and Townsend in the Northern District of Illinois. In addition, the Receiver appointed as a result of the SEC case is suing Legent in this District as well as Enterprise, Lohmeier and Townsend. All or almost all of the relevant documentary evidence as well as the witnesses are located in Illinois. This clearly makes the Northern District of Illinois

a proper venue for this case. However, Legent does not deny that venue would also be proper in California.

Since venue exists in both districts, it must be determined which forum is the more convenient. In making this determination, the Court considers the private interest factors, *i.e.*, the convenience of the parties and the witnesses, and the public interest. With respect to private interest factors, the courts consider the plaintiff's choice of forum, the site of material events, the relative ease of access to sources of proof, the convenience of the witnesses, and the convenience of the parties. *North Shore Gas Co. v. Salomon, Inc.*, 896 F.Supp. 786, 791 (N.D.Ill., 1995). Here the first four factors favor Legent. It chose the Northern District of Illinois, most of the material events occurred here, access to proof is here, and many of the material witnesses are here. Defendants have not identified a single non-party witness who is located in California or anywhere other than Illinois.

Defendants argue that since the issue here is arbitrability, the witnesses and evidence involved in the SEC case are largely irrelevant, but Legent also seeks a declaration in this suit as to its role in the underlying events as set forth in the SEC complaint, and if the case remains and must be litigated here, Defendants will undoubtedly file a Counterclaim against Legent. The last factor, convenience of the parties, would seem to favor

Defendants: there are 55 of them and the cost for them to come to Chicago would be prohibitive. However, they individually have little to add to the case by way of testimony. They were kept in the dark by Enterprise and Lohmeier, and their cases appear to be fungible so that their testimony would be largely cumulative. Moreover, Legent is being forced to litigate the case brought by the Receiver, who is suing it, on behalf of, among others, the Defendants, in this court.

The final consideration is the public interest. Court congestion between the Northern District of California and this district are comparable. This Court is the site of the SEC's and the Receiver's actions which give this District an interest in related litigation which is absent in California. In addition, this would allow Legent, who is a party to the Receiver's action, to localize its defense efforts in one district. Accordingly, the Motion to Dismiss or Transfer Venue is denied.

### B. Motion for a Temporary Restraining Order

A party cannot be required to submit to arbitration unless he has agreed to do so. *United Steelworkers of America v. Warrior and Gulf Nav. Co.*, 80 S.Ct. 1347 (1960). Whether the parties have so agreed is question of law for the Court and not the arbitrator unless it is clear and unmistakable that they have done so. *AT&T Technologies, Inc. v. Communication Workers of America*, 106 S.Ct. 1415 (1986). The Defendants rely on FINRA Rule 12200 as providing

a basis for arbitration.  They insist that they are customers of Legent and as customers they are entitled to arbitrate.  They also point to FINRA's denial of Legent's motion that FINRA refuse Defendants' arbitration request.

Legent contends that it is entitled to a TRO and a Preliminary Injunction because there is no contractual or other basis for requiring it to arbitrate with the Defendants.  The only basis asserted for obligating Legent to arbitrate is Legent's membership in FINRA, and the allegation that the Defendants were its customers, which Legent denies.  In order to be entitled to a TRO a plaintiff must demonstrate a likelihood of success on the merits, irreparable harm and no adequate remedy at law, the balance of harms, and that the public interest will be served by the issuance of a TRO.  *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386-387 (7th Cir., 1984).

It is clear from the record that all actions taken by Legent that affected Defendants' assets in the commingled Enterprise account were as a clearing broker for Enterprise and not for the Defendants, since the omnibus account was in Enterprise's name alone.  The duties of a clearing broker are ministerial in nature.  It acts as a liaison or line of communication between the investor and a clearing corporation, which is normally affiliated with an exchange.  It helps to ensure that a trade is settled appropriately and the transaction is successful.  Clearing brokers are also

responsible for maintaining paperwork associated with the clearing and executing of a transaction. A clearing broker normally does not make any independent investment decisions. *See, www.wisegeek.com/what-is-a-clearing-broker.htm. See also, Carlson v. Bear Stearns & Co., Inc.*, 906 F.2d 315, 317 (7th Cir., 1990). In this case, the account which Legent was in charge of clearing was with Enterprise and not with any of the Defendants, even though their assets had been transferred and commingled into the Enterprise account. The Defendants had entered into agreements with Enterprise in which they each delegated authority to Enterprise to act as their agent with respect to their accounts. In short, there was one account in the name of Enterprise in which all of the Defendants' accounts were commingled together with each other and other Enterprise clients. There is nothing anywhere that suggests that there was any relationship between Legent and any of the Defendants other than as a depository of their money. Therefore, on the record presently before the Court there was no broker/customer relationship between Legent and any of the Defendants.

The case of *Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2nd Cir., 2003) does not help Defendants. In that case, a broker engaged in a fraudulent scheme in which he misled investors into believing he was their broker when he was not. The court found that, under those facts, there was a customer/broker relationship. The court

went on, however, to note "where investors pool their funds and relinquish all investment authority to a third party who deals with an NASD broker, that third party, not the investor, will normally be the broker's customer." *Bensadoun* at 316 F.3d at 178. Similarly, in the case of *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352 (2nd Cir., 1995) persons were determined to be customers where the broker had solicited funds from them for investment with him even though he wrongfully placed their funds in an account in another name. This is analogous to the Defendants as customers, *vis-à-vis*, Enterprise as broker. On the other hand, in *Interactive Brokers, LLC v. Duran*, No. 08 CV 6812, 2009 WL 393827 (N.D.Ill., Feb. 17, 2009) this Court's colleague, Judge Robert M. Dow, Jr., on very similar facts (the case arose out of similar misdeeds by Enterprise with relation to other of its customers, whose funds were similarly commingled in an account with an online brokerage firm), found no customer relationship existed between the Enterprise account holders and the on-line broker and thus enjoined an ongoing arbitration proceeding. Accordingly the Court finds that Legent has a high likelihood of success on the merits.

With respect to the remaining elements necessary for the issuance of a TRO, the Court finds that there is no adequate remedy at law and there is irreparable harm. "Forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm." *Chicago School Reform Bd. of Trustees v.*

*Diversified Pharmaceutical*, 40 F.Supp.2d 987, 996 (N.D.Ill., 1999). The Court also finds that balancing the harms falls Plaintiff's way also. The harm to Defendants is in delay of the arbitration proceeding if the Court later finds that there is, in fact, a customer relationship. The harm to Plaintiff is irreparable because it will be forced to arbitrate an issue to which it had not agreed. Finally the public interest is served because, while arbitration is favored, nevertheless it is in the public interest to uphold the right of non-consenting parties' access to the courts.

### III.  CONCLUSION

For the reasons stated herein, the Court:

(1)  Denies the Motion of the Defendants to Dismiss or Transfer Venue; and

(2)  Grants Legent's Motion for a Temporary Restraining Order.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 8/19/2009